**E-FILED**
Monday, 30 April, 2007  01:42:05 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| ALAN TIMM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No.  05-1276 |
| | ) | |
| ILLINOIS DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

_____Now comes the defendant, ILLINOIS DEPARTMENT OF CORRECTIONS, by its

attorney, Lisa Madigan, Attorney General for the State of Illinois, and pursuant to Rule 56

of the Federal Rules of Civil Procedure ("FRCP") and CDIL-LR 7.1 hereby respectfully

moves this honorable Court to grant it summary judgment in this matter, stating as follows:

## I.  INTRODUCTION

Plaintiff filed a Complaint against the Illinois Department of Corrections (herein

"Department") alleging that, because he is a male,  the Plaintiff was discriminated against

and fired, unlike similarly situated female employees, in violation of Title VII of the Civil

Rights Act of 1964 (42 U.S.C. § 2000e *et seq*.).  For the reasons set forth below, the

Department is entitled to summary judgment as a matter of law.

## II.  UNDISPUTED MATERIAL FACTS

1.    On November 5, 2003, at 5:45 p.m., Kimberly Davis-Bills ("Kimberly") was

pronounced dead at the University of Illinois - Chicago Hospital.  Medical Examiner's –

Coroner's Certificate of Death, dated November 6, 2003, a copy of which is attached

hereto as Exhibit 1.

2.    Kimberly's cause of death was an intra-cerebral hemorrhage due to hypertensive cardiovascular disease.  Exhibit 1, Medical Examiner's – Coroner's Certificate of Death, dated November 6, 2003.

3.    Kimberly was an offender housed at the Dwight Correctional Center. Affidavit of Ted Conkling (a copy of which is attached hereto as Exhibit 2), ¶2.

4.    Dwight Correctional Center housed female offenders who were in the custody of the Illinois Department of Corrections.  Conkling Affidavit, ¶3.

5.    Offenders housed at the south end of the Dwight Correctional Center  are in buildings, which are commonly referred to as cottages.  Transcript of Plaintiff's Deposition ("Plaintiff's Dep."), a copy of which is attached hereto as Exhibit 3, at 16.

6.    Kimberly was housed in the C12 Cottage at Dwight Correctional Center. Conkling Affidavit, ¶4.

7.    Cottage C12 houses offenders who are in disciplinary segregation.  Plaintiff's Dep. at 14 and 18.

8.    The cottage has four wings which form a shape like the letter "K", the A, B, C, and D, wings.  Plaintiff's Dep. at 17, and 20.

9.    There is also a centrally located control panel, which in prison slang is sometimes referred to as the  "panel" or "bubble."   Plaintiff's Dep. at 18.

10.    There are windows in the control panel from which one can see onto the various wings that make up the building.  Plaintiff's Dep. at 18.

11.    A correctional officer stationed in the control panel controls the door into the building.  Plaintiff's Dep. at 19.

-2-

12.    A male named Larry Ford was the correctional officer in the control panel of Cottage C12  during the 7 a.m. to 3 p.m. shift on November 4, 2003.  Plaintiff Dep. at 21.

13.    A male named Stevens was the correctional officer assigned to the A and B wings of Cottage C12 during the 7 a.m. to 3 p.m. shift on November 4, 2003.  Plaintiff's Dep. at 21.

14    A female named Barbara Hoffmeyer was the correctional officer assigned to the C and D wings of Cottage C12 from approximately 8 a.m. until 3 p.m. on November 4, 2003.   Plaintiff Dep. at 21-22.

15.    The Plaintiff, who is male, was a correctional sergeant.  Plaintiff's Dep. at 11.

16.    The Plaintiff was the supervisor of the C12 cottage during the 7 a.m. to 3 p.m. shift on November 4, 2003.  Plaintiff's Dep. at 17-19; 22.

17.    On November 4, 2003, the Plaintiff was usually positioned in the control panel.  Plaintiff's Dep. at 18.

18.    Kimberly shared her cell with another offender named Christine Kazmirzak. Plaintiff's Dep. at 45.

19.    At approximately, 10:00 to 10:30 a.m., Kimberly appeared before a hearing officer on a disciplinary ticket that she had received.  Plaintiff's Dep. at 37.

20.    After returning Kimberly to her cell, Officer Hoffmeyer advised the Plaintiff that Kimberly reported feeling dizzy.  Plaintiff's Dep. at 37.

21.    Plaintiff recalls Officer Hoffmeyer saying something about Kimberly wanting to see the nurse.  Plaintiff's Dep. at 39-40.

22.    Plaintiff told Hoffmeyer that Kimberly could not go see the nurse.  Plaintiff's Dep. at 39-40.

-3-

23.    Hoffmeyer called Janice Miller.  Plaintiff's Dep. at 9-10, 37, and  93; .

24.    Miller is an licensed practical nurse (LPN).  Plaintiff's Dep. at 9-10.

25.    Miller advised Hoffmeyer to instruct Kimberly to lie down and elevate her feet. Plaintiff's Dep. at 79-80.

26.    Hoffmeyer then went down to relay these instructions to Kimberly. Plaintiff's Dep. at 37.

27.    After talking to an offender on suicide watch,  who the Plaintiff described as a "known one to cry," he went down the C wing to where Kimberly was housed.  Plaintiff's Dep. at 41-42; 44.

28.    Hoffmeyer told the Plaintiff that Kimberly was lying on the floor.  Plaintiff's Dep. at 42.

29.    The Plaintiff looked in Kimberly's window.  Plaintiff's Dep. at 42.

30.    Plaintiff observed Kimberly lying on her side like she had suffered a seizure. Plaintiff's Dep. at 42.

31.    The Plaintiff observed that Kimberly's cell mate had put her maroon winter jacket over Kimberly like a blanket.  Plaintiff's Dep. at 42.

32.    The Plaintiff told Kimberly to get up off the floor.  Plaintiff's Dep. at 42.

33.     The Plaintiff assumed that Kimberly had suffered a seizure.  Plaintiff's Dep. at 42.

34.    Nonetheless, the Plaintiff left Kimberly lying on her side on the floor of her cell and "just went probably into the panel, sat down, and waited for the noon food to show up." Plaintiff's Dep. at 42 and 47.

35.    By the time the food arrived at approximately 12:45 p.m., the Plaintiff had left

the cottage and was in the administrative building talking to the assistant warden of operations about some security concerns the midnight shift had. Plaintiff's Dep. at 48.

36.    After the Plaintiff had talked to the assistant warden of operations for maybe fifteen or twenty minutes, he received a call from the shift commander's "office girl." Plaintiff's Dep. at 49.

37.    The Plaintiff went over and talked to the "office girl" about the Christmas party. Plaintiff's Dep. at 49.

38.    The Plaintiff talked to the "office girl" for ten to fifteen minutes, until he receive a telephone call from correctional officer Sila. Plaintiff's Dep. at 49.

39.    Officer Sila was on the unit to take segregation offenders to the health care unit. Plaintiff's Dep. at 49.

40.    Officer Sila told the Plaintiff that Kimberly was lying on the floor. Plaintiff's Dep. at 50.

41.    The Plaintiff instructed officer Silla to go take somebody else. Plaintiff's dep. at 50.

42.    The Plaintiff went down and nudged Kimberly on the hip with his foot. Plaintiff's dep. at 50-51; 94.

43.    Kimberly did not flinch or anything when Plaintiff nudged her with his foot. Plaintiff's dep. at 50-51.

44.    Thus, Plaintiff felt for a pulse in Kimberly's neck, but could not find one. Plaintiff's dep. at 50-51.

45.    At approximately 2:00 p.m., the Plaintiff observed nurses coming in the door of the unit. Plaintiff's dep. at 50-51.

46.     The Plaintiff does not know how the nurses were informed.   Plaintiff's dep. at 50-51.

47.     The Department conducted an investigation into the incident.   Conkling Affidavit, ¶6; Report of Investigation,  attached hereto as Exhibit 4, without attachments.

48.     The investigative report was relied upon by the Department in the discharge proceedings against the Plaintiff.  Conkling Affidavit at ¶10; Timm – Employee Review Memorandum, Exhibit 5 at 4.

49.     The investigative report relied upon by the Department stated that Offender Kazmirzak had observed a 35 year old, tall, white male look into the cell during the morning and say to Kimberly before leaving:  "Get up, or are you going to lay there all fucking day until the next shift comes."  Report of Investigation, Exhibit 4, at 3.

50.     The investigative report relied upon by the Department stated that Offender Kazmirzak observed the same 35 year old male later return, open the door, place his foot on Kimberly's buttocks, shake her and say "Come on, you can get up" and leave.  Report of Investigation, Exhibit 4, at 3.

51.     The investigative report relied upon by the Department stated that another offender named Vancil also observed the Plaintiff open the door and nudge Kimberly with his foot.  Report of Investigation, Exhibit 4, at 3.

52.     The investigative report relied upon by the Department stated that Hoffmeyer informed the Plaintiff that Kimberly was lying on the floor, but the Plaintiff did not care. Report of Investigation, Exhibit 4, at 4.

53.     The investigative report relied upon by the Department stated that Hoffmeyer asked Plaintiff a second time to help get Kimberly off the floor, to which the Plaintiff

responded "Fuck her."  Report of Investigation, Exhibit 4, at 4.

54.    The investigative report relied upon by the Department stated that, at one point, Plaintiff asked why Hoffmeyer kept going down to Kimberly's cell and Plaintiff told Hoffmeyer that it "just causes problems."  Report of Investigation, Exhibit 4, at 4.

55.    The investigative report relied upon by the Department stated that, when another officer named McElroy asked the Plaintiff about Kimberly being on the floor, the Plaintiff responded "we know about it."  Report of Investigation, Exhibit 4, at 5.

56.    The investigative report relied upon by the Department stated that McElroy later observed the Plaintiff go to Kimberly's cell, kick on the door, say "get up," open the door, shut it about 30 seconds later, then stand there and continue to say "get up."  Report of Investigation, Exhibit 4, at 6.

57.    The investigative report relied upon by the Department stated that at about 1:05 p.m., when he arrived at the cottage, Officer Sila told Ford that Sila needed to take Kimberly and another offender to health care, but was told that there was no supervisor in the building.  Report of Investigation, Exhibit 4, at 6.

58.    The investigative report relied upon by the Department stated that the Plaintiff arrived about one-half hour later, opened the food slot, yelled at Kimberly, slammed the food slot shut and then instructed Sila to take the other inmate.  Report of Investigation, Exhibit 4, at 6.

59.    The investigative report relied upon by the Department stated that a counselor named Sutton reported that Hoffmeyer had been concerned about Kimberly. Report of Investigation, Exhibit 4, at 7.

60.    The investigative report relied upon by the Department stated that Sutton

overheard staff saying that they could not open the door without a supervisor.  Report of Investigation, Exhibit 4, at 7.

61.    The investigative report relied upon by the Department stated that Sutton overheard Hoffmeyer tell the Plaintiff that Kimberly was not responding and that they needed to call someone, to which the Plaintiff responded that Kimberly was faking it. Report of Investigation, Exhibit 4, at 7.

62.    The investigative report relied upon by the Department stated that, at one point, Sutton heard the Plaintiff say "fuck her" with respect to Kimberly.  Report of Investigation, Exhibit 4, at 7.

63.    The investigative report relied upon by the Department stated that Plaintiff observed Kimberly lying on her side around 11:00 a.m.  Report of Investigation, Exhibit 4, at 9.

64.    The investigative report relied upon by the Department stated that Plaintiff remembered observing liquid, possibly urine, on the floor around Kimberly and thought she was either having or had a seizure.  Report of Investigation, Exhibit 4, at 9.

65.    The investigative report relied upon by the Department stated that Plaintiff denied touching Kimberly's buttocks with his foot.  Report of Investigation, Exhibit 4,  at 9.

66.    The investigative report relied upon by the Department stated that Kimberly's death was due to natural causes.  Report of Investigation, Exhibit 4, at 11.

67.    The investigative report relied upon by the Department stated that Plaintiff and correctional officers Hoffmeyer and Ford violated the Department Rules of Conduct regarding negligence.  Report of Investigation, Exhibit 4 at 11.

68.    On January 15, 2004, employee review hearings were held with respect to

-8-

the reported misconduct of the Plaintiff and correctional officers Hoffmeyer and Ford. Conkling Affidavit, ¶¶8, 10, 11, and 12.

69.     Ted Conkling, the Assistant Warden of Programs was the Employee Review Officer.  Conkling Affidavit, ¶9.

70.     Copies of the Employee Review Hearing Memoranda are attached hereto as Exhibits 5, 6, and 7.

71.     In his Memorandum, Assistant Warden Conkling recommended that the Plaintiff be discharged due to the "severity of the incident and the overall failure of Sgt. Alan Timm to complete his supervisory responsibilities", noting as follows:

> The external investigation case number 04-DWI-097 clearly substantiates negligence and a failure to follow written guidelines.  Sgt. Timm's failure to accurately report the incident is completely evident in the fact that his incident report dated November 4, 2003 (attachment 41) recorded only events beginning at 2:00 PM.  Sgt. Timm did admit in 04-DWI-097 involvement in relevant events beginning as early as 11:00 AM, on that date. Sgt. Timm additionally admitted in 04-DWI-097 that the offender Davis-Bells, N57280 had suffered a seizure when he checked her at approximately 11:00 AM, yet he never contacted the Health Care Unit before medical staff arrived at 2:00 P.M.

Timm – Employee Review Memorandum, Exhibit 5at 4.

72.     In his Memorandum,  Assistant Warden Conkling also recommended that Officer Hoffmeyer be discharged due to the "severity of the incident", noting as follows:

> The External Investigation Case Number 04-DWI-097 clearly substantiates negligence and a failure to follow written guidelines.  Additionally, Officer Barbara Hoffmeyer's incident report dated November 4, 2003 (Attachment 25) records events only beginning at 2:00 PM, however, during the investigation interview Officer Hoffmeyer admitted involvement in relevant events beginning as early as 11:00 AM on November 4, 2003.  This hearing officer notes that Officer Barbara Hoffmeyer made several trips to C-12, Room C-1 to check on Offender Davis-Bells, N57280 noticing little or no change in Offender Davis-Bells condition.  Following the visits to Room C-1 Officer Hoffmeyer called nursing staff and advised her supervisor Sgt. Alan

Timm. The problem existed that Offender Davis-Bells actions and conditions persisted with no further follow-up from Officer Hoffmeyer. Officer Hoffmeyer should have immediately sought out another supervisor other than Sgt. Alan Timm.

Hoffmeyer – Employee Review Memorandum, Exhibit 6 at 4.

73.    In his Memorandum, Assistant Warden Conkling recommended that Officer

Ford receive a 10 day suspension, stating as follows:

The External Investigation Case Number 04-DWI-097 clearly substantiates negligence and a failure to follow written guidelines. C/O Larry Ford failed to record any entries in the C-12 Panel logbook from 10:20 AM to 12:35 PM on 11/4/03. This included what time he, C/O Ford, was relieved for lunch. The fact that pertinent entries were not placed in the C-12 Panel logbook on 11/4/03 is extremely serious in light of the incident that took place.

Ford – Employee Review Memorandum, Exhibit 7 at 3-4.

74.    The Warden, Alyssa B. Williams, concurred with Assistant Warden Conkling's

recommendations with respect to Ford, Hoffmeyer, and the Plaintiff. Conkling Affidavit,

¶13; Employee Review Memoranda, Exhibits 5, 6, and 7, at 4.

75.    The Department subsequently approved a 15 day suspension of Officer

Hoffmeyer, instead of the discharge that Conkling had recommended. Disciplinary Action

– Suspension Notice, dated February 12, 2004, a copy of which is attached as Exhibit 8.

76.    In October, 2004, pursuant to an agreed resolution prior to Arbitration

between the Union, Hoffmeyer, Ford, and Central Management Services for the State of

Illinois, Officer Ford's suspension was reduced to one day and Officer Hoffmeyer's

suspension was reduced to ten days. Resolution Prior to Arbitration, a copy of which is

attached hereto as Exhibit 9.

77.    The Plaintiff proceeded to arbitration, and his discharge was upheld by

Arbitrator Herman Torosian, on August 12, 2004. Arbitration Award of Herman Torosian,

dated August 12, 2004, a copy of which is attached hereto as Exhibit 10.

78.    Arbitrator Torosian found, among other things, that, as the supervisor in charge, the Plaintiff was negligent in his handling of Kimberly's situation.  Arbitration Award, Exhibit 10, at 13.

### III.  APPLICABLE LAW

### A.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Allen v. Rockford*, 349 F.3d 1015, 1019 (7th Cir. 2003).  While a court must review the record in the light most favorable to the nonmovant, a party who bears the burden of proof on a particular issue may not rest on his pleading, but must set forth specific facts showing that there is a genuine issue of material fact which requires a trial.  *Brownell v. Figel, et al.*, 950 F.2d 1285, 1292-1293 (7th Cir. 1991).  Inferences supported only by speculation or conjecture will not defeat a summary judgment motion.  *Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004).

### B.    PLAINTIFF ALLEGES DISCRIMINATION BECAUSE OF HIS SEX

Plaintiff alleges that he was treated less favorably than other similarly situated employees, because of his sex.  His claim fails, however, because, unlike the Plaintiff, the employees he attempts to compare himself to were not sergeants, had different responsibilities, had a different supervisor than the Plaintiff.  With the rewards of the Department's paramilitary rank of sergeant also came the responsibilities of that rank.  Besides, Ford, the male correctional officer involved in the incident actually received a less

lengthy suspension than Hoffmeyer, the female correctional officer involved.

Equal protection claims typically involve charges of singling out members of a vulnerable group for unequal treatment or charges that a law or policy makes irrational distinctions between groups of people. *Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004). Equal protection claims may also involve a "class of one" where the plaintiff alleges that only he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004).[1] In the case at bar, the Plaintiff does not allege that he was singled out for intentional, irrational and arbitrary discrimination. Instead, the Plaintiff claims that he was discriminated against, because of his sex, in violation of Title VII of the Civil Rights Act of 1964.

## 1)    Plaintiff Cannot Demonstrate Discrimination Using The Direct Method

A plaintiff may prove employment discrimination under Title VII by using either the "direct method" or "indirect method." *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003). The direct method of proof permits plaintiff to show by way of direct or circumstantial evidence that his employer's decision to take adverse job action against him

---

[1]The "class of one" plaintiff bears the burden of proving that he has suffered intentional, irrational and arbitrary discrimination. *Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004). He can do so either by showing that he was treated differently from identically situated persons for no rational reason, or that he was treated worse than less deserving individuals for no rational reason. *Id.* The plaintiff must "eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* at 708. Merely inconsiderate or inappropriate behavior does not demonstrate the type of deep seated animosity that the court has found to support an equal protection claim. *Id.* Such animosity occurs when a powerful public official picks on a person out of sheer vindictiveness, or when an official acts for the sole and exclusive purpose of exacting retaliation and vengeance against the plaintiff. *Id.* at 709.

was motivated by impermissible purpose such as sex. *Rhodes v. Ill. Dept. of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004). Direct evidence is evidence that if believed by the trier of fact would prove discriminatory conduct on the part of employer without reliance on inference or presumption. *Rhodes v. Ill. Dept. of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004). Direct evidence essentially requires an admission by the decision maker that his actions were based upon prohibited animus. *Rhodes v. Ill. Dept. of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004). Here, there is no such admission by the decision maker that determined the appropriate discipline for the employees involved in the incident on the day prior to Kimberly's death. Instead, the undisputed facts show that the Plaintiff was fired because he was the supervisor of the cottage and he negligently handled the incident involving Kimberly.

A plaintiff can also prevail under the direct method of proof by constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decision maker. *Rhodes v. Ill. Dept. of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004). Circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action. *Id.* Here, the circumstantial evidence points directly to the Plaintiff's negligence as supervisor of the cottage with respect to the incident the day before Kimberly died, as the reason for his employer's action.

**2)    Plaintiff Cannot Prevail Using The Indirect Method Either**

If a plaintiff cannot prevail under the direct method of proof, he must proceed under the indirect method. *Rhodes v. Ill. Dept. of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004). In order to indirectly establish proof of discrimination in a Title VII claim, the plaintiff

-13-

must first establish the *prima facie* elements. *Id.* Those elements are (1) that he is a member of a protected class; (2) that he was performing his job satisfactorily; (3) that he suffered an adverse employment action; and (4) that similarly situated employees outside of his protected class were treated more favorably. *Goodwin v. Board of Trustees of University of Illinois*, 442 F.3d 611, 617 (7th Cir. 2006).

The Plaintiff is not entitled to call into question the veracity or motives of the Department unless he first demonstrates that he was meeting the Department's legitimate workplace expectations. *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1064 (7th Cir. 2003) (plaintiff who fails to demonstrate that he was meeting employer's legitimate expectations may not put his employer to the burden of stating the reasons for his termination). Here, the undisputed facts demonstrate that the Plaintiff, as the sergeant in charge of the cottage, did not meet those expectations.

To show that another employee is "similarly situated," the plaintiff must show that there is someone who is comparable to him in all material respects. *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 531-532 (7th Cir. 2003).

> To determine whether two employees are directly comparable, a court looks at all the relevant factors, which most often include whether the employees (I) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications – provided the employer considered these latter factors in making the personnel decision.

*Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 532 (7th Cir. 2003); *see also*, *Snipes v. Ill. Dept. of Corrections*, 291 F.3d 460, 463 (7th Cir. 2002) (upholding district court's finding that correctional officers were not similarly situated where the correctional officers lacked common supervisors). The plaintiff cannot meet his burden by pointing to

-14-

the absence of any similarly situated female employees.  *Durkin v. City of Chicago*, 341 F.3d 606, 614 (7th Cir. 2003). It is his duty to prove that the Department treated similarly situated female employees more favorably.  *Durkin v. City of Chicago*, 341 F.3d 606, 614 (7th Cir. 2003).

Here, the Plaintiff is not similarly situated in all material respects to any female employee.  Plaintiff was the sergeant responsible for supervising the cottage in which Kimberly lived.  The Plaintiff had to be present in order for Kimberly's cell to be opened. The Plaintiff thought Kimberly had suffered a seizure, yet he left her lying on the floor for hours.  The Plaintiff treated Kimberly worse than most people would treat an animal – yelling at her to get up and nudging her with his foot.

It is the unusual employer who discriminates against majority employees, thus, a male plaintiff alleging gender discrimination must show something more than the fact that he is gendered.  *Mlynczak v. Bodman*, 442 F.3d 1050, 1057 (7th Cir. 2006).  The plaintiff in such cases must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against men or evidence that there is something fishy about the facts at hand.  *Mlynczak v. Bodman*, 442 F.3d 1050, 1057-1058 (7th Cir. 2006)(noting that stray remarks made by non-decision makers are not evidence that the decision maker had a discriminatory motive).

Thus, the only element of the *prima facie* case that the Plaintiff can show is that he suffered an adverse employment action.  The Plaintiff can establish none of the other elements.  He was not performing his job satisfactorily.  Instead, he was negligent in his supervision of the incident on the day prior to Kimberly's death.  The Plaintiff cannot demonstrate that the Department had reason or inclination to discriminate invidiously

against men, and, given the circumstances of the incident and Plaintiff's callous handling of the same, it is not surprising that he was discharged.

At his deposition the Plaintiff suggested that Hoffmeyer and Miller were female employees similarly situated to him, but were not discharged. Plaintiff's Dep. at 9-10. Unlike the Plaintiff, however, neither Hoffmeyer nor Miller was the sergeant responsible for the cottage in which Kimberly was housed. As the Seventh Circuit Appellate Court has recognized, it is not surprising that an employer would both demand and expect more from an employee serving in a supervisory role. *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 532-533 (7th Cir. 2003)(summary judgment for defendant where, unlike plaintiff, proposed comparable in race discrimination claim was non-supervisory employee). Moreover, Ford, a male correctional officer, received less severe discipline than Hoffmeyer, a female correctional officer.

The Plaintiff cannot establish a *prima facie* case that he was discriminated against because of his sex. Even if he could establish a prima facie case, his claim still fails, because there was a legitimate non-discriminatory reason to discharge the Plaintiff, i.e., the sergeant who negligently supervised the cottage in which Kimberly resided on the day before her death. If a plaintiff successfully establishes each element of the *prima facie* case, the burden shifts to the defendant to assert a legitimate non-discriminatory reason for the challenged action. *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003). Where, as here, the defendant has asserted a legitimate non-discriminatory reason for the challenged action, then the burden shifts back to the plaintiff to present evidence that would allow the trier of fact to conclude the defendant's proffered reason is pretextual. *Id.* Here, the Department had a legitimate non-discriminatory reason for firing the Plaintiff,

because the Plaintiff was negligent in his supervision of the incident regarding Kimberly. Although the Plaintiff was the only person fired as a result of his misconduct the day before Kimberly died, he was also the only correctional sergeant involved in the incident.

It is also not sufficient for the Plaintiff to show that the Department made a mistake when determining that the Plaintiff's misconduct as a sergeant was more egregious than the misconduct of officer Hoffmeyer or the actions of LPN Miller. *See, Hughes v. Brown*, 20 F.3d 745, 747 fn5 (7th Cir. 1994)(proof that the defendant made a mistake does not establish that the proffered reason was pretextual). Instead, the Plaintiff must establish that the Department's proffered reason, i.e., its reasonable belief that the Plaintiff's misconduct with respect to Kimberly was more egregious given his status as a supervisor, was a mere pretext for gender bias. *Id.* In light of the undisputed facts, the Plaintiff cannot met this burden.

WHEREFORE, the Defendant Illinois Department of Corrections asks that the Court grant it summary judgment and such other relief as the Court deems equitable and just.

Respectfully submitted,

ILLINOIS DEPARTMENT OF CORRECTIONS

Defendant,

LISA MADIGAN, Attorney General,
State of Illinois,
    Attorney for Defendant,

By:   /s/ David M. Walter
        David M. Walter, #6244907
        Assistant Attorney General
        500 South Second Street
        Springfield, IL 62706
        Telephone:  (217) 782-5819
        Facsimile:  (217) 524-5091
        dwalter@atg.state.il.us

-17-

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

ALAN TIMM,                          )
                                    )
           Plaintiff,               )
                                    )
    -vs-                            )        No.  05-1276
                                    )
ILLINOIS DEPARTMENT OF              )
CORRECTIONS,                        )
                                    )
           Defendant.               )

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2007, I electronically filed the foregoing Memorandum of Law in Support of Motion for Summary Judgment with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

James P. Baker
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, IL 62701
carenbakerlaw@sbcglobal.net

and I hereby certify that on April 30, 2007, I mailed by United States Postal Service, the document to the following non-registered participant:

None

Respectfully submitted,

/s/ David M. Walter
David M. Walter, #6244907
Assistant Attorney General
500 South Second Street
Springfield, IL  62706
Telephone:  (217) 782-5819
Facsimile:  (217) 524-5091
dwalter@atg.state.il.us

-18-