IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ALAN TIMM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | No. 05-1276 |
| ) | |
| ILLINOIS DEPARTMENT OF CORRECTIONS, ) | |
| ) | |
| Defendant. ) | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now comes the Defendant, ILLINOIS DEPARTMENT OF CORRECTIONS, by its attorney, Lisa Madigan, Attorney General for the State of Illinois, and for its Reply in support of its Motion for Summary Judgment states as follows:

**I.   Response to Plaintiff's Additional Material Facts**

**A.   Additional Material Facts Admitted**

Defendant admits the following Additional Material Facts for the purposes of this Motion for Summary Judgment only: 1, 4, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 21, 22.

**B.   Additional Material Facts Denied**

2 – Plaintiff claims "Sergeants do not have much direct inmate contact." This statement is not supported by the record. Plaintiff testified that "I was not in direct contact with the inmates." (Deposition of Timm at p. 9, lines 14-15). This does not support the general statement that "Sergeants do not have much direct inmate contact." Defendant admits the remaining allegations contained in Paragraph 2 for the purposes of this Motion only.

3 – Plaintiff claims "Hoffmeyer did not have to have Timm's permission to open the cell door of an inmate if she thought there was a problem or a medical emergency." While Plaintiff's deposition testimony supports the claim that Hoffmeyer could open the cell door in

case of emergency, (Deposition of Timm at p. 92, lines 14-17), it does not support the claim that she could do so if she "thought there was a problem." Defendant admits the remaining allegations contained in Paragraph 3 for the purposes of this Motion only.

5 – The cited deposition testimony does not support the claim that Plaintiff saw Davis-Bills at the times stated.

11 – Plaintiff claims that, "after he was contacted by Sila, Timm returned to the unit to see what was happening with inmate David-Bills." While Plaintiff's deposition testimony supports the claim that he returned to the unit, there is no evidence in the record as to why Plaintiff returned to the unit. (Deposition of Timm at p. 103, lines 1-6). Defendant admits the remaining allegations contained in Paragraph 11 for the purposes of this Motion only.

18 – Plaintiff claims that "Hoffmeyer. . . was given three or four chances to rewrite her incident report." Actually, Plaintiff's testimony was that Hoffmeyer was required to rewrite her incident report because it did not contain sufficient detail. (Deposition of Timm at p. 56, line 5 – p. 58, line 1).

20 – Plaintiff claims that female officers are treated differently than males at Dwight Correctional Center because "female officers do not usually get written up for refusing overtime." (Response at p. 7). However, when questioned about this at his deposition, Plaintiff testified that a single shift commander, Major Cranford, would write up male officers for refusing overtime but would not write up female officers for similar conduct, and Plaintiff could not recall any other shift commanders who do not write up female officers for refusing overtime. (Timm Deposition at p. 85, line 12 – p. 87, line 7). There is no evidence in the record that, in general, females are treated better than males at Dwight Correctional Center. At best, there is a claim that a single individual, Major Cranford, may treat females better

under certain circumstances, but this claim is immaterial because there is no evidence that Major Cranford played any role in the decision to discharge the Plaintiff.

Also n Additional Material Fact 20, Plaintiff points to his testimony that a Lt. Johnson was fired based on allegations made by a female officer, and the "courts proved there was no allegation to it." (Timm Deposition at p. 87, lines 17-20). As an initial matter, Plaintiff has not established sufficient foundation for his testimony regarding Lt. Johnson's alleged firing. *See* Hemsworth v. Quotesmith.com Inc., 476 F.3d 487, 490 (7th Cir. 2007)("The evidence relied upon in defending a motion for summary judgment must be competent evidence of a type otherwise admissible at trial.") Plaintiff has not established how he learned that Lt. Johnson was allegedly fired, on what the alleged firing was based, or how exactly the "courts proved there was no allegation to it." In fact, IDOC and court records demonstrate that Lt. Johnson's testimony is inaccurate in several respects. Lt. Don Johnson was never fired, but rather was suspended pending judicial verdict after he was indicted for custodial sexual misconduct and intimidation. (Exhibits B and C). After Lt. Johnson was acquitted on the intimidation charge and the custodial sexual misconduct charge was dropped, Lt. Johnson was allowed to return to work. (Exhibit D).

    **C.**    **Additional Facts that are not material**

18 – The allegation that CO Hoffmeyer was required to rewrite her incident report because she failed to provide sufficient detail is immaterial as it does not indicate preferential treatment. Plaintiff testified that CO Hoffmeyer's incident report was only three or four lines and was shorter than Plaintiff's. There is no reason to believe Plaintiff would not have been required to rewrite his incident report if he had submitted one with insufficient detail.

19 – Plaintiff claims that he had a conversation at a mall with Ted Conkling, former Assistant Warden of Programs at Dwight Correctional Center, in which Mr. Conkling stated

that Plaintiff was terminated because he was a male employee. (Response at p. 13). Even if such a statement were made, it was inadmissible hearsay. Mr. Conkling recalls having a conversation at the Bradley Mall with Plaintiff in the Summer of 2004, although he denies making the statements Plaintiff attributes to him. This conversation occurred during a 13 month period in which Mr Conkling was not under the employ of the Illinois Department of Corrections. (Conkling Affidavit attached as Exhibit A). Because Mr. Conkling was not employed by the Department of Corrections when he allegedly made this statement, the statement cannot be treated as a party admission and is inadmissable hearsay. *See* Federal Rule of Civil Procedure 801(d)(2)(D)("A statement is not hearsay if [it is] offered against a party and is. . . a statement by the party's agent of servant concerning a matter within the scope of the agency or employment *made during the existence of the relationship.*")(emphasis added). Plaintiff therefore cannot use the alleged statement to defeat summary judgment. *See* Hemsworth v. Quotesmith.com Inc., 476 F.3d 487, 490 (7th Cir. 2007)("The evidence relied upon in defending a motion for summary judgment must be competent evidence of a type otherwise admissible at trial.")

Even if the alleged statement was admissible, it would be immaterial. Assistant Warden Conkling recommended that female Correctional Officer Barbara Hoffmeyer be discharged along with Plaintiff. Therefore, he could not have been referring to his own motivation for recommending that Plaintiff be discharged when he allegedly said Plaintiff was discharged because he was male. The decision to suspend CO Hoffmeyer rather than discharge her was made by IDOC decision-makers in Springfield. Mr. Conkling is not aware of the reason or reasons that CO Hoffmeyer was not discharged. (Conkling affidavit attached to Motion for Summary Judgment). Therefore, any comments he allegedly made about the

reasons Plaintiff was discharged and CO Hoffmeyer was not would have been speculation rather than evidence of the true reasons for the decision.

20 – Even if there were proper foundation for Plaintiff's testimony regarding Lt. Johnson, the testimony would be immaterial because it does not establish that women are treated more favorably than men. There is no evidence of any case where a male employee made similar allegations against a female employee, the female employee was not fired, and the male employee was disciplined for making the allegations. There is simply no evidence that the Department of Corrections' decisions in the Lt. Johnson matter were influenced in any way by the gender of the people involved. Plaintiff's testimony does nothing to establish that female employees receive favorable treatment, and the testimony is therefore immaterial.

**ARGUMENT**

   **II.   The material facts Plaintiff claims are disputed are supported by his own deposition testimony and are not contradicted by any competent evidence in the record.**

Plaintiff disputes Material Fact 22 from the Motion for Summary Judgment, which states that "Plaintiff told Hoffmeyer that Kimberly could not go see the nurse." Plaintiff claims that the Department "mischaracterized his testimony." (Plaintiff's Response at p. 2). At his deposition, Plaintiff testified "I remember her [Hoffmeyer] saying something about she [Kimberly] wanted to see the nurse. I said, well, you know, she can't go see the nurse. Call the nurse and see what she says and go back and tell the nurse or go back and tell [Kimberly] Davis what the nurse says." (Plaintiff's Dep at p. 39, line 24 – p. 40, line 4). Material Fact 22 is directly supported by Plaintiff's testimony, and the Defendant respectfully requests that the Court treat it as undisputed as it is not contradicted by any competent evidence in the record.

Plaintiff also disputes Material Fact 30, which states "Plaintiff observed Kimberly lying on her side like she had suffered a seizure." Plaintiff claims that "the Department has

mischaracterized the observations immediately made by Timm when he was asked to check on inmate [Kimberly] Davis-Bills." (Plaintiff's Response at p. 3). At his deposition, Plaintiff was asked "What did you observe about Inmate [Kimberly] Davis? Describe her for me." and Plaintiff responded "She was laying on the floor on her side like she had a seizure." (Plaintiff's Dep at p. 42, lines 20-23). Material Fact 30 is taken directly from Plaintiff's own deposition testimony, and the Defendant respectfully requests that the Court treat it as undisputed as it is not contradicted by any competent evidence in the record.

Likewise, Plaintiff disputes Material Fact number 34, which states "nonetheless, the Plaintiff left Kimberly lying on her side on the floor of her cell and 'just went probably into the panel, sat down, and waited for the noon food to show up.'" Plaintiff claims that this quote, taken directly from Page 47 of his deposition, was "taken out of context." Plaintiff gives no indication as to why he feels that the "context" of the quote would change its clear meaning, and none is apparent from reading the deposition transcript. Plaintiff's testimony plainly indicates that, after seeing Kimberly lying on the floor on her side like she had a seizure, Plaintiff went into the panel, sat down, and waited for the noon food to arrive. Defendant therefore asks that this fact be treated as undisputed, as it is not contradicted by any competent evidence in the record.

**III.    Plaintiff cannot prove discrimination using the direct proof method.**

The only direct evidence Plaintiff claims supports his allegations of discrimination is a conversation he allegedly had with Ted Conkling at the Bradley Mall. As stated above, the statements attributed to Ted Conkling are inadmissable hearsay because Ted Conkling was not employed by the Illinois Department of Corrections at the time of the conversation. Even if the alleged out-of-court statement were admissible, it represents nothing more than speculation regarding the motivation for Plaintiff's firing.

"Establishing discrimination by the direct method requires the plaintiff to produce evidence that the trier of fact can interpret as an acknowledgment of the employer's discriminatory intent." <u>Chiaramonte v. Fashion Bed Group, Inc.</u>, 129 F.3d 391, 396 (7th Cir.. 1997). Such evidence is only relevant if it relates to the motivation of the decision maker responsible for the decision. <u>Id.</u> In <u>Chiaramonte</u>, the 7th Circuit found that a statement by the CEO that age was a factor in the decision was not direct evidence of discrimination because the CEO was not the decision maker and there was no evidence that the CEO knew the motivation for the decision. <u>Id.</u> at 397. The 7th Circuit found that "statements by a non-decision-maker that amount to mere speculation as to the thoughts of the decision-maker are irrelevant to our inquiry." <u>Id.</u>

In the current case, Conkling was involved in the decision in that he recommended that Plaintiff be discharged. However, the statements attributed to him cannot relate to his own motivation for recommending discharge. Conkling is not alleged to have said "I recommended that you be discharged because you are male." Plaintiff's gender cannot have been Conkling's motivation because Conkling also recommended that a female CO be discharged over the same incident. Nor can Conkling's statement be direct evidence of the motivation of other decision makers because there is no evidence that Plaintiff knew of the motivations of other decision makers, and in fact Conkling stated in his affidavit (attached to the Motion for Summary Judgment) that he does not know why CO Hoffmeyer was not discharged. Conkling's alleged statement is, at best, speculation as to the reasons Plaintiff was discharged and not CO Hoffmeyer.

### IV. Plaintiff was not similarly situated to the female employees who were not discharged because he was a supervisor.

Plaintiff claims that he is similarly situated to two female employees, Correctional Officer Hoffmeyer and Correctional Nurse Miller, who were not discharged.

Plaintiff is not similarly situated to CO Hoffmeyer because he is her supervisor. Plaintiff was the highest ranking employee involved in this situation. As the Seventh Circuit has recognized, it is not surprising that an employer would both demand and expect more from an employee serving in a supervisory role. Ajayi v. Aramark Business Services, Inc., 336 F.3d 520, 532-533 (7th Cir. 2003)(summary judgement for defendant where, unlike plaintiff, proposed comparable in race discrimination claim was non-supervisory employee.) Plaintiff is not similarly situated to Correctional Nurse Miller because Nurse Miller did not engage in similar conduct to Plaintiff. Correctional Nurse Miller was not even present at the cottage. Correctional Nurse Miller was not informed that Kimberly had suffered a seizure or that she was lying on the ground but rather was told that Kimberly was "feeling dizzy." Furthermore, Correctional Nurse Miller was not the sergeant responsible for the cottage in which Kimberly was housed. Plaintiff was a nurse, and her job duties were completely different from Plaintiff's. Furthermore, there is no evidence that Correctional Nurse Miller held a supervisory position. Plaintiff was the highest ranking employee on the scene, and therefore was held to a higher standard than the other employees. This is a relevant distinction between Plaintiff and the alleged comparables.

Plaintiff relies on Johnson v. Zema Systems, 170 F.3d 734 (7th Cir. 1999) to support his position that he is similarly situated to the female employees. In Johnson the 7th Circuit stated that "an employer cannot insulate itself from claims of racial discrimination simply by providing different job titles to each of its employees." Id. at 743. The Seventh Circuit held

-8-

that Johnson, who was Vice President of Sales and Marketing, was similarly situated to James Doney, the Vice President and General Manager, because he was the only person besides Johnson to occupy an intermediate managerial position. In this case, the differences between Plaintiff and the female employees is significantly more than job titles. Plaintiff was a supervisor. Plaintiff cannot point to a female supervisor who engaged in similar conduct and was not discharged. Therefore, Plaintiff cannot state a prima-facie case of discrimination.

### V.  Plaintiff cannot establish a background of preferential treatment for females.

Because Plaintiff is claiming reverse discrimination, he must show background circumstances that demonstrate the employer has a reason or inclination to discriminate against men.  Plaintiff cannot meet this burden.  Plaintiff alleges that a single shift commander, who was not involved in the decision to discipline Plaintiff, does not write up females for refusing overtime.  Plaintiff also alleges that Hoffmeyer was required to rewrite her incident report because she did not include sufficient detail.  Plaintiff points to a male employee who was put on suspension pending judicial verdict after he was indicted for custodial sexual misconduct.  None of this demonstrates a background of treating females favorably to males.

### VI.  Plaintiff was not meeting his employers reasonable expectations when he negligently allowed an inmate to lay on the floor dying in her cell.

Plaintiff admits that he saw Kimberly lying on the floor and assumed that she had a seizure. Plaintiff further admits that he left Kimberly lying on the floor while he attended to his other duties.  He did not even call the infirmary to tell a medical professional that he felt Kimberly had suffered a seizure.  While Nurse Miller had been informed that Kimberly was feeling dizzy, there is no evidence in the record to indicate that anyone in the infirmary was informed that Kimberly was lying on the floor or that she had suffered a seizure.  It was

-9-

Plaintiff's duty to insure the safety of the inmates in the cottages he supervised. He failed miserably in that duty, and a woman died because of it. By failing to insure that Kimberly received medical attention after Plaintiff assumed she had a seizure, Plaintiff fell short of his employers legitimate expectations. Therefore, Plaintiff cannot state a prima facie case of discrimination.

### VII. The Department fired Plaintiff for a legitimate reason, namely his negligent supervision which led Kimberly's death.

Plaintiff was discharged because his negligent supervision of the cottage led to Kimberly's death. Plaintiff saw Kimberly lying on the floor and assumed that she had suffered a seizure. Plaintiff took no action to insure that Kimberly received medical attention, supposedly relying on the fact that CO Hoffmeyer had previously called Nurse Miller and told her that Kimberly was "feeling dizzy." Kimberly lay on the floor dying while Plaintiff attended to his other duties. This is a legitimate reason for discharging Plaintiff, and Plaintiff can point to nothing to indicate that it is a phony reason. Therefore, even if Plaintiff could state a prima facie case of discrimination, the Department of Corrections would still be entitled to Summary Judgment.

The Department relied on the investigative report in determining the proper discipline to be handed down over this incident. The investigative report stated that CO Hoffmeyer asked Plaintiff to help get Kimberly off the floor and Plaintiff replied "fuck her." (Defendant's Statement of Material Facts ¶53). The investigative report also stated that Hoffmeyer told Plaintiff that Kimberly was not responding and that they needed to call someone, to which Plaintiff responded that Kimberly was faking it." (Defendant's Statement of Material Facts ¶61). The investigative report upon which the Department relied indicated that, while CO Hoffmeyer demonstrated some concern for Kimberly's well-being, Plaintiff did not. This,

-10-

coupled with the fact that Plaintiff was Hoffmeyer's supervisor and was held to a higher standard, provides a legitimate basis for the decision to discharge Plaintiff and not CO Hoffmeyer.[1]

**Conclusion**

For the reasons stated in the Memorandum in Support of Motion for Summary Judgment and in this Reply, the Defendant, Illinois Department of Corrections, asks that the Court grant it summary judgment and such other relief as the Court deems equitable and just.

Respectfully submitted,

ILLINOIS DEPARTMENT OF CORRECTIONS,
   Defendant,

LISA MADIGAN, Attorney General,
State of Illinois,
   Attorney for Defendant,

By:  s/ Thomas H. Klein
     Thomas H. Klein, #6271653
     Assistant Attorney General
     500 South Second Street
     Springfield, IL 62706
     Telephone: (217) 782-9014
     Facsimile: (217) 524-5091
     tklein@atg.state.il.us

---

[1] Plaintiff denies the accuracy of some of the statements in the investigative report but has provided no evidence that would suggest that the Department of Corrections decision makers were not entitled to rely on it.