E-FILED
Thursday, 11 October, 2007  10:49:25 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ALAN TIMM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-1276 |
| | ) |
| ILLINOIS DEPARTMENT OF CORRECTIONS, | ) |
| | ) |
| Defendant. | ) |

## O R D E R

This matter is now before the Court on Defendant's Motion for Summary Judgment. For the reasons set forth below, Defendant's Motion for Summary Judgment [#13] is GRANTED.

### BACKGROUND

Kimberly Davis-Bills ("Davis") was an inmate at the Dwight Correctional Center and was housed in the C12 Cottage for inmates in disciplinary segregation. The C12 Cottage has four wings in ths shape of a letter "K" which are referred to as the A, B, C, and D wings. A centrally located control panel allows corrections officers to see onto the various wings in the building, and a corrections officer stationed in the control panel controls the door into the building. On November 4, 2003, Officer Larry Ford ("Ford") was assigned to the control panel in C12 Cottage from 7:00 a.m. to 3:00 p.m. Officer Jeremy Stevens was assigned to the A and B wings from 7:00 a.m. to 3:00 p.m., and Officer Barbara Hoffmeyer ("Hoffmeyer") was assigned to the C and D wings from 8:00 a.m. to 3:00 p.m. Plaintiff,

Sergeant Alan Timm ("Timm"), was a correctional sergeant who supervised the C12 Cottage during the 7:00 a.m. to 3:00 p.m. shift and was usually positioned in the control panel.

At approximately 10:00 to 10:30 a.m., Davis appeared before a hearing officer on a disciplinary ticket that she had received. After returning her to her cell, Officer Hoffmeyer advised Sergeant Timm that Davis complained of feeling dizzy. Sergeant Timm recalls being told that Davis wanted to see the nurse and instructed Officer Hoffmeyer to call the nurse and follow her directions. Officer Hoffmeyer called Nurse Janice Miller ("Miller"), who told Officer Hoffmeyer to instruct Davis to lie down and elevate her feet. Officer Hoffmeyer relayed these instructions to Davis.

Shortly thereafter, Officer Hoffmeyer told Sergeant Timm that Davis was lying on the floor. Sergeant Timm went to her cell and looked through the window. He observed Davis lying on her side on the floor "like she had a seizure" and assumed that she had had a seizure. Sergeant Timm asked her if she was OK and told her that she needed to get up off the floor; Davis responded "Yeah" and waived her arm. He then asked Davis' cellmate if everything was OK, and her cellmate answered "Yes" and indicated that they were just talking.

By 12:45 p.m., Sergeant Timm had left the cottage and gone to the administration building to speak with the assistant warden. After about 20-30 minutes, Sergeant Timm received a call from the shift commander's secretary regarding the Christmas party. He spoke to her about the Christmas party for 10-15 minutes before receiving a call from Officer Mark Sila, who advised him that Davis was lying on the floor. Officer Sila was in the

cottage to take inmates, including Davis, to the health care unit. Davis was not dressed, so Sergeant Timm instructed him to take someone else.

Sergeant Timm then returned to the cottage and went down to Davis' cell. He nudged her on the hip with his foot, but she was not responsive. He then felt for a pulse on her neck but could not find one. Sergeant Timm went to the panel to call the nurse and observed nurses already coming in the door of the unit. Davis was then transported to the hospital via ambulance.

At 5:45 p.m. on November 5, 2003, Davis was pronounced dead at the University of Illinois – Chicago Hospital. Her cause of death was determined to have been intra-cerebral hemorrhage due to hypertensive cardiovascular disease.

The Department of Corrections conducted an investigation into the incident. The investigative report indicated that Christine Kazmirzak ("Kazmirzak"), Davis' cellmate, observed a 35-year old, tall, white male look into the cell during the morning and tell Davis, "Get up, or are you going to lay there all fucking day until the next shift comes." Kazmirzak observed the same male officer return to the cell later, open the door, place his foot on Davis' buttocks, shake her and say"Come on, you can get up." Another inmate, Michelle Vancil, observed Sergeant Timm open the door and nudge Davis with his foot. The investigation concluded that Sergeant Timm, Officer Hoffmeyer, and Officer Ford had violated the Department Rules of Conduct regarding negligence.

On January 15, 2004, employee review hearings were held regarding the incident. Ted Conkling ("Conkling"), the Assistant Warden of Programs was the Employee Review Officer. Following the hearings, Conkling recommended that Sergeant Timm be discharged due to the "severity of the incident and the overall failure of Sgt. Alan Timm to complete his

supervisory responsibilities." In making his recommendation, Conkling noted that Sergeant Timm failed to accurately report the incident, in that he neglected to report any involvement by him prior to 2:00 p.m. that day.  Conkling also recommended the discharge of Officer Hoffmeyer due to the "severity of the incident" and her failure to seek out another supervisor after Sergeant Timm failed to take action; Officer Hoffmeyer had likewise failed to report any of her involvement prior to 2:00 p.m. that day.  Conkling further recommended that Officer Ford receive a 10-day suspension for failing to record any entries in the panel logbook from 10:20 a.m. to 12:35 p.m. on November 4, 2003.  Warden Alyssa Williams concurred with Conkling's recommendations.  The Department of Corrections subsequently approved a 15-day suspension for Officer Hoffmeyer in lieu of the recommended discharge.

In October 2004, the Union, Officer Hoffmeyer, Officer Ford, and the State entered into an agreed resolution prior to arbitration.  By agreement, Officer Ford's suspension was reduced to one day, and Officer Hoffmeyer's suspension was reduced to 10 days.  Sergeant Timm proceeded to arbitration, and his discharge was ultimately upheld by Arbitrator Herman Torosian on August 12, 2004.

On September 21, 2005, Sergeant Timm filed this action alleging that the Department of Corrections discriminated against him on the basis of his gender.  The Department of Corrections has now moved for summary judgment.  The matter is fully briefed, and this Order follows.

## STANDARD OF REVIEW

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." Id. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex, 477 U.S. at 324. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

**ANALYSIS**

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee on the basis of gender. 42 U.S.C. § 2000e-2.[1] To make out such a claim, Sergeant Timm must show that he has been the victim of intentional discrimination. Rhodes v. Ill. Dept. of Transp., 359 F.3d 498, 504 (7th Cir. 2004). He can make this showing using the direct or indirect method. The indirect method is also known as the McDonnell Douglas burden-shifting method. Huff v. UARCO, Inc., 122 F.3d 374, 380 (7th Cir. 1997).

**A. Direct Method**

Under the direct method, employees may use direct or circumstantial evidence. Direct evidence is evidence that "without reference or explanation, ties the illicit motive with the adverse employment action." Lucas v. Chicago Transit Authority, 367 F.3d 714, 728 n.12 (7th Cir. 2004). Direct evidence is generally not available in employment discrimination cases because it is limited to the employer's admission of discriminatory intent. There is no direct evidence of discrimination in this case; thus Sergeant Timm must proceed with circumstantial evidence under the direct method or under the indirect method.

Circumstantial evidence is "evidence that allows a jury to infer intentional discrimination by the decisionmaker." Venturelli v. ARC Cmty. Servs., Inc., 350 F.3d 592, 599 (7th Cir. 2003). Using circumstantial evidence under the direct method allows an

---

[1] Where, as here, a claim of intentional discrimination is brought pursuant to 42 U.S.C. § 1983, the Seventh Circuit has directed courts to apply the same standards of proof as those utilized under Title VII. Steinhauer v. Degalier, 359 F.3d 481, 483 (7th Cir. 2004). Accordingly, in resolving this Motion, the Court will utilize and reference the well-established case law of Title VII.

employee to present a "convincing mosaic" of circumstantial evidence that permits the trier of fact to infer intentional discrimination. Rhodes, 359 F.3d at 504. Such evidence could include: (1) evidence of behavior toward or comments directed at other employees in the protected group and other bits and pieces from which an inference of discriminatory intent might be drawn, or (2) evidence whether or not rigorously statistical that employees similarly situated to the plaintiff other than for the protected characteristic received systematically better treatment. Such circumstantial evidence "must point directly to a discriminatory reason for the employer's action." Id.; Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 939 (7th Cir. 2003); Rhodes v. Illinois Department of Transportation, 395 F.3d 498, 504 (7th Cir. 2004). Additionally, a plaintiff "must come forward with evidence that a decisionmaker expressed discriminatory feelings around the time of and in reference to" the adverse employment action. Coney v. Promotions Unlimited Corp., No. 03-4289, 2004 WL 2486758, at *3 (7th Cir., Oct. 28, 2004), citing Gorence v. Eagle Food Ctrs., Inc., 242 F.3d 759, 762 (7th Cir. 2001).

     Here, Sergeant Timm suggests that he has direct evidence of discrimination based on a conversation that he had with Assistant Warden Conkling following his termination. During the conversation, Sergeant Timm contends that Conkling stated that he was terminated because he was a male working in a female institution. As Conkling was the Employee Review Officer who recommended his discharge, he contends that this statement was sufficient to raise the inference that gender may have played a roll in his discharge.

     The Department responds that any statement made by Conkling is hearsay because if such a statement was made, it was made during a time when Conkling was not employed

by the Department of Corrections. Federal Rule of Evidence 801(d)(2)(D) provides that a statement is not hearsay if it is offered by a party's agent concerning a matter within the scope of the employment and is made during the existence of the relationship. However, as Conkling was no longer employed by the Department at the time he made this statement, it cannot be deemed an admission by a party opponent for purposes of creating a genuine issue of material fact. As Sergeant Timm has not cited or provided any exception to the hearsay rule or other means of establishing the admissibility of Conkling's alleged statement, the Court must conclude that the statement is inadmissible hearsay that cannot be used to defeat summary judgment or otherwise considered in resolving this motion. *See* Fed. R. Civ. P. 56(e) (reminding that asserted facts must be admissible in evidence.)

Moreover, even assuming that the statement was somehow admissible, Conkling also recommend the discharge of Officer Hoffmeyer, a female, for her conduct in connection with the Davis incident. Conkling therefore did not treat Sergeant Timm, the male employee, any differently than Officer Hoffmeyer, the female employee. Warden Alyssa Williams concurred with Conkling's recommendations. The Court further notes that Conkling's recommendation was subsequently approved with respect to Sergeant Timm and modified with respect to Officer Hoffmeyer by unnamed decisionmakers in Springfield. Conkling has stated in his affidavit that he had no involvement in the subsequent decision and has no personal knowledge as to the basis for that decision. (Conkling Affidavit at ¶ 14). Thus, Sergeant Timm has pointed to no discriminatory animus on the part of the Department decisionmakers in Springfield, much less on the part of the neutral, third-party

arbitrator who also upheld his discharge. Accordingly, Sergeant Timm has not presented direct evidence of discrimination.

### B. Indirect Method

Even though Sergeant Timm cannot establish that Department discriminated against him based on his gender under the direct method, he may be able to establish that Department did so under the indirect or burden shifting method. Under the burden-shifting method, the employee must first establish a prima facie case of discriminatory intent by proving certain elements that lead to an inference of impermissible discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792; Johnson v. City of Fort Wayne, Ind., 91 F.3d 922, 931 (7th Cir. 1996). To establish a prima facie case of discrimination, Sergeant Timm must show that he belongs to a protected class, that he was performing up to the Department's legitimate expectations, that he suffered an adverse employment action, and that the Department treated similarly situated employees outside of the protected class more favorably. Rhodes, 359 F.3d at 504; Mateu-Anderegg v. Sch. Dist. of Whitefish Bay, 304 F.3d 618, 625 (7th Cir. 2002). Once a plaintiff has established the prima facie case, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for its employment action. Steinhauer v. Degolier, 359 F.3d 481, 484 (7th Cir. 2004). At this point, the employer is entitled to summary judgment unless the plaintiff can present sufficient evidence that the employer's proffered reason is a pretext for discrimination. Id.

The Department does not argue that Sergeant Timm did not suffer an adverse employment action and makes only a passing reference to his membership in a protected category. However, his ability to satisfy the second and fourth prongs of the prima facie case is more seriously challenged.

The Department first contends that Sergeant Timm was not performing up to its legitimate expectations at the time of his discharge. Although he may have otherwise been a good employee and generally met or exceeded the Department's expectations throughout his employment, the question is whether he was meeting the Department's expectations at the time that he suffered the adverse employment action. Brummett v. Lee Enterprises, Inc., 284 F.3d 742, 745 (7th Cir. 2002).

The Department's performance arguments are directed solely toward his conduct in connection with the incident involving Davis and the finding of negligence that resulted from the investigation following her death. Where an employee is subject to disciplinary action for a sudden and egregious breach of company policy, the Seventh Circuit has assumed that the employee is meeting his employer's legitimate expectations and addressed this issue simultaneously with the issue of pretext. Jones v. Union Pacific R.R. Co., 302 F.3d 735, 742 (7th Cir. 2002). Therefore, the Court assumes for purposes of the prima facie case that Sergeant Timm was performing up to the Department's legitimate expectations, at least insofar as his performance prior to November 4, 2003.

The Department next argues that Sergeant Timm has not shown himself to have been similarly situated, in that he has failed to identify another employee who is comparable to him in all material respects. "Similarly situated" does not mean "identical." Grayson v. O'Neill, 308 F.3d 808 (7th Cir. 2002). However, a plaintiff claiming that he was disciplined more harshly than another employee must show that he is similarly situated "with respect to performance, qualifications, and conduct." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000). Typically, this requires a plaintiff to show that the two employees "dealt with the same supervisor, were subject to the same standards, and had

engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Id., at 617-18; see also, Ajayi v. Aramark Business Services, Inc., 336 F.3d 520, 532 (7th Cir. 2003).

Here, Sergeant Timm complains that he was treated differently than Officer Hoffmeyer because he was terminated whereas her recommended discharge was reduced to a suspension. The record before the Court reveals that Officer Hoffmeyer is not similarly situated. She was merely a correctional officer, while Sergeant Timm, a correctional sergeant, was in fact Officer Hoffmeyer's supervisor. While he complains that there is no caselaw holding that an employee must hold the same classification, Sergeant Timm ignores the reality that as Officer Hoffmeyer's supervisor, he was reasonably held to a higher standard. The Seventh Circuit has held that supervisory and non-supervisory employees are not sufficiently comparable. Id., at 532-33.[2]

Sergeant Timm also suggests that he was treated less favorably that Nurse Miller, who was not disciplined as a result of the incident. However, this argument barely passes the red face test because her conduct was not in any way equivalent. Sergeant Timm was the sergeant responsible for the cottage, and the most senior officer involved in the Davis incident. He was present in the cottage, was informed that Davis was not feeling well, was told and observed that Davis continued to lay on the floor, admitted that he thought that she had suffered a seizure, and yet took no action. Nurse Miller was not present in the cottage and had no supervisory responsibility for the cottage. As a nurse, her job duties would be readily distinguishable from those of the correctional officers. Nurse Miller was also

---

[2] The Court would also note that Hoffmeyer, a female, was disciplined more severely than Officer Ford, the male officer who was working the control panel that day.

dependent on the information that was relayed to her from corrections staff, and it is clear that she was not provided full or adequate information. Shortly after 10:00 a.m., she was told only that Davis was feeling dizzy. Later, Officer Hoffmeyer told her that Davis had fallen off the toilet, in response to which she told Officer Sila to bring Davis to the infirmary on his next trip. Nurse Miller was never told that the officers thought that Davis had suffered a seizure or that she was unresponsive, and neither Officer Hoffmeyer nor Sergeant Timm told her that Davis had been lying on the floor for hours. It was not until shortly before she went to the cottage after 2:00 p.m. that she was informed by Officer Sila that Davis was not getting up from the floor of her cell.

This is not a case where an employer is relying on technical, non-substantive differences in the wording of job titles in an attempt to defeat a finding of sufficient similarity. Sergeant Timm has identified no supervisory female employee who had similar knowledge and engaged in similar conduct but was not recommended for discharge. Accordingly, he has failed to establish the fourth prong of the prima facie case of discrimination.

Even assuming that Sergeant Timm was able to make out a prima facie case of discrimination on the basis of his gender, the Department has stated that he was discharged for his negligent supervision of the cottage that led to an inmate's death. Because the Department has articulated a legitimate, non-discriminatory reason why Sergeant Timm was discharged, the burden shifts back to Sergeant Timm to prove that the Department's reason is a pretext for intentional gender discrimination.

Pretext requires more than a showing that the decision was "mistaken, ill considered or foolish," and so long as the employer "honestly believes those reasons, pretext has not

been shown." Ballance v. City of Springfield, 424 F.3d 614, 617 (7th Cir. 2005). "Pretext 'means a dishonest explanation, a lie rather than an oddity or an error.'" Id., *citing* Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 685 (7th Cir. 2000). Sergeant Timm argues that he followed the protocol established by the Department in following the instructions of the nurse on call at the time that Davis became ill. Therefore, he contends that the stated reason for his discharge is phony because he was fired for failing to meet expectations that the Department never actually had or required.

Had his awareness of the situation ended with the report by Officer Hoffmeyer that Davis was feeling dizzy and told by the nurse to elevate her feet, his point might be well taken. However, Sergeant Timm fails to acknowledge that he continued to "rely on" the directions of a nurse who he knew or should have known had not been given a complete or updated report regarding Davis' condition. Even after he assumed that Davis had suffered a seizure, he failed to make any effort to either inform the nurse of the change in Davis' condition or to direct that Officer Hoffmeyer do so; instead, he thought it was more important to plan the staff Christmas party. While his initial reliance when all that was known was that Davis was feeling dizzy may have been reasonable, it became more unreasonable as time continued to pass, and he became aware that her condition showed signs of worsening. Sergeant Timm has presented no Departmental policy that provides that a correctional supervisor may hide his head in the sand and take no action when an inmate's condition is perceived to have deteriorated after the initial report to the medical department.

Furthermore, the record indicates that the Department relied on the investigative report finding that Sergeant Timm violated the Department Rule of Conduct of Individual

regarding Negligence that was compiled in response to Davis' death.  This report contained statements by other correctional staff and inmates detailing much more serious misconduct by Sergeant Timm than merely failing to comprehend the seriousness of the situation, including that he made statements to the effect of "Fuck her" and that she was "faking it" when Officer Hoffmeyer advised him of Davis' condition.  Although Sergeant Timm disagrees with some of the statements contained within the investigative report, he has presented no evidence that would indicate that the Department could not reasonably rely on it in making its decision to terminate his employment or that the Department did not honestly believe that he had engaged in negligence warranting discharge.  Finally, the fact that an independent arbitrator reviewed the evidence, heard his argument, and affirmed his discharge suggests that the Department's stated reasons were not pretextual.

The Court does not sit as a super-personel department with authority to review an employer's business decision as to whether certain misconduct warrants discharge from employment, and it would not be appropriate for the Court to express any opinion as to whether the sanction imposed against an employee may be perceived as too severe. Balance, 424 F.3d at 621.  Even when viewed in the light most favorable to Sergeant Timm, the evidence cannot reasonably be found to demonstrate anything more than that the Department may have erred in determining that his misconduct was more severe than Officer Hoffmeyer's misconduct.  As this is insufficient to meet his burden, he has failed to establish that the Department's articulated reason for his discharge was merely a cover for discriminatory animus against males, and the Department is entitled to summary judgment on his gender discrimination claim.

## CONCLUSION

For the reasons set forth herein, the Motion for Summary Judgment [#13] is GRANTED. This matter is now terminated.

ENTERED this 11th day of October, 2007.

                                                  s/ Michael M. Mihm
                                                  Michael M. Mihm
                                                  United States District Judge